| Case No. | **18-cv-00749-VAP (SHKx)** | Date | June 29, 2018 |
|---|---|---|---|

| Title | ***Jorge A. Zepeda v. Mastec Network Solutions, LLC, et al.*** |
|---|---|

| Present: The Honorable | VIRGINIA A. PHILLIPS, CHIEF UNITED STATES DISTRICT JUDGE |
|---|---|

| BEATRICE HERRERA | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** MINUTE ORDER DENYING PLAINTIFF'S MOTION TO REMAND (DOC. NO. 14) (IN CHAMBERS)

On May 21, 2018, Plaintiff Jorge A. Zepeda ("Plaintiff") filed a Motion to Remand the instant action to the Superior Court of the State of California for the County of Riverside ("Riverside Superior Court").  (Doc. No. 14 ("Motion").) Defendants Mastec Network Solutions, LLC ("MNS LLC"), Mastec Services Company, Inc. ("MSC"), Mastec Network Solutions, Inc. ("MNS Inc."), and Westower Communications, LLC ("Westower") (collectively, "Defendants") opposed the Motion on May 25, 2018, (Doc. No. 16 ("Opposition")), and Plaintiff replied on June 4, 2018, (Doc. No. 17 ("Reply")).  After consideration of the papers filed in support of and in opposition to the Motion, as well as the arguments advanced at the June 18, 2018 hearing on this Motion, the Court DENIES the Motion.

## I.    Background

Plaintiff and the other putative Class members were employed by Defendants as non-exempt hourly Foreman and Technicians, as well as "in similar and related positions performing job duties attendant to the construction, installation, servicing[,] and maintenance of communications towers and support structures." (Doc. No. 1-1 ("Complaint") ¶ 2.)  On February 16, 2018, Plaintiff filed a complaint on behalf of himself and those similarly situated against Defendants in Riverside Superior Court, alleging nine violations of various California Labor Code sections.  (*See* Compl.)  Plaintiff also indicates that he intends to add a tenth cause of action for penalties under the Private Attorneys General Act ("PAGA").  (Mot. at 3.)  Plaintiff served the Complaint on Defendants MNS LLC and MNS Inc. on March 15, 2018, Defendant MSC on March 16, 2018, and Westower on March 21, 2018.  (Doc. Nos. 1-2, 1-3, 1-4, 1-5.)

On April 12, 2018, Defendants removed the instant action to this Court, claiming the Court has jurisdiction under the Class Action Fairness Act ("CAFA"). (*See* Doc. No. 1 ("Removal").)  Plaintiff now contests this Court's jurisdiction over this action.  (*See* Mot.)

## II.    Legal Standard

Removal jurisdiction is governed by statute.  *See* 28 U.S.C. §§ 1441, *et seq.*; *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress.").  Defendants may remove a case to a federal court when a case originally filed in state court presents a federal question or is between citizens of different states.  *See* 28 U.S.C. §§ 1441(a)-(b),

1446, 1453.  Only those state court actions that originally could have been filed in federal court may be removed.  28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).  "[N]o antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

A defendant's notice of removal only needs to include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold and need not contain evidentiary submissions.  *Id.*  Evidence establishing that the amount in controversy satisfies the jurisdictional threshold is required if the plaintiff contests or the court questions the defendant's allegations.  *Id.*  When the defendant's allegations are challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id.*

This proof may consist of "evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197.  "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure."  *Id.* at 1198.  In other words, "a defendant cannot establish removal jurisdiction by mere speculation

and conjecture, with unreasonable assumptions." *Id.* at 1197. Reasonable assumptions are reasonable deductions, inferences or extrapolations drawn from specific factual allegations, supportable by evidence (if challenged by the plaintiff or the court). *Id.* (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010); *see also Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.").

"While [the p]laintiff *may* rebut [the d]efendant's evidence with his own evidence, he need not do so in order to prevail in his Motion." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *2 (C.D. Cal. May 21, 2015) (emphasis in original). "A plaintiff is required to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meets its initial burden.'" *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1120 (C.D. Cal. 2016).

### III.    Discussion

Plaintiff's Complaint does not allege a specific amount in damages. (*See* Compl.) Therefore, Defendants bear the initial burden of proving by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Ibarra*, 775 F.3d at 1197. Plaintiff argues that Defendants fail to meet this burden because the amount in controversy set forth by Defendants in their Removal notice is neither supported by credible evidence nor reasonably conservative assumptions. (*See* Mot. at 1.) The parties do not contest that CAFA's jurisdictional requirements of minimum diversity and class numerosity are satisfied.

## A. Timeliness

Defendants argue that the Court should deny Plaintiff's Motion as untimely because it was not filed within 30 days of the notice of removal. (Opp'n at 4-5.) Defendants' argument is without merit because "defects going to the subject matter jurisdiction of the court cannot be waived and may be raised at any time." *Libhart*, 592 F.2d at 1065. The issue on this motion is one of subject matter jurisdiction; the 30 day time limit pursuant to 28 U.S.C. § 1447(c) therefore does not apply.

## B. Evidence Considered by the Court

Plaintiff seeks to limit the evidence the Court considers in evaluating Defendants' removal by arguing that the Court can only consider the complaint, notice of removal, and state court record. (Mot. at 4.) Plaintiff's argument lacks merit. In measuring the amount in controversy, "[a] court may . . . consider supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice." *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 n. 1 (9th Cir. 2002)); *see also Ibarra*, 775 F.3d at 1197 (holding defendant is not required to submit evidence establishing the amount in controversy until either the plaintiff or the court contests its allegations).

## C. The Amount in Controversy

Defendants contend that a "conservative" estimate of the total amount in controversy based on the Complaint is $6,626,363, excluding attorneys' fees. (Opp'n at 23.) Defendants set forth the following amounts in controversy for each claim to arrive at this total: $635,823 for Unpaid Wages (first and second

claims); $1,619,550 for Minimum Wage Penalties (first claim); $1,264,251 for

Meal Break Premiums (third claim); $1,264,251 for Rest Break Premiums (fourth

claim); $649,650 for Wage Statement Penalties (sixth claim); and $1,192,838 for

Waiting Time Penalties (eighth claim).[1]  (*Id.*)  This figure excludes the

$1,656,590.75 estimate in attorneys' fees calculated at 25%, totaling

$8,282,953.75.  (Opp'n at 22-23.)  Plaintiff attacks Defendants' calculation for

each subcategory.  The Court turns to each calculation in turn, insofar as it is

relevant to the outcome of this Motion.

### 1.      Meal Break and Rest Break Premiums

Plaintiff seeks to recover for meal break and rest break violations and

collect premiums for the violations pursuant to California Labor Code sections

226.7 and 512(a).  (Compl. ¶¶ 71-85.)  California Labor Code section 512(a)

requires employees receive a thirty minute meal break for every shift exceeding

five hours.  Employees are also entitled to a ten minute rest break for every four

hours worked.  Cal. Lab. Code § 226.7.  Under California Labor Code section

226.7, employees can recover penalties for an employer's failure to provide meal

and rest breaks.

Plaintiff makes the following general allegations which apply to these and

all other claims:

- "Plaintiff and the Employees in the Class generally worked five (5) to

   six (6) days a week and for work shifts of at least ten (10) to twelve

---

[1] The amount in controversy for the waiting time penalty set forth in the Opposition
revises the amount in Defendants' removal.  (Removal at 18; *cf.* Opp'n at 23.)

(12) hours, and in many instances well over twelve (12) hours or for as many as eighteen (18) hours." (Compl. ¶ 15.)

- "Defendants did not maintain real time punch records accurately reflecting the actual hours worked by Plaintiff and the Class members. Instead, tower team Foremen or Technicians would input time into the computer . . . by completing daily work reports. These reports were completed and inputted at the end of a daily shift, or else after work hours, and Plaintiff and the Class members were required by Defendants to input times that did not reflect all hours actually worked and were instead intended to conform to the number of hours a job was expected to take or took in reality." (*Id.*)

Plaintiff's allegations regarding the meal and rest break violations include

- "Employees regularly worked shifts greater than five (5) hours and in most instances, greater than ten (10) hours." (Compl. ¶ 72.)
- "Employees were often required to work through their meal periods or provided with them after working beyond the fifth hour of their shifts or otherwise had them shortened and interrupted by work demands. . ." (Compl. ¶ 73.)
- "Defendants had a consistent policy and practice of not providing Plaintiff and the Class members with either first or second meal period on their shifts, which generally exceeded twelve hours." (Compl. ¶ 74.)
- "On shifts where Plaintiff and the Class members worked shifts of over ten hours, which they consistently did, they were not provided

with a second uninterrupted, timely and duty-free thirty minute meal
period." (*Id.*)

- "On the shifts when Plaintiff was able to take a first rest period during
  a shift, he was not generally not [*sic*] able to take a second rest
  period, and when Plaintiff worked shifts over ten (10) hours, he was
  not authorized and permitted to take a third rest period." (Compl.
  ¶ 80.)

Defendants contend that the total amount in controversy for meal and rest
break premiums is $2,528,502 by assuming two meal periods and two rest break
periods were denied per week. (Opp'n at 23.)[2] In support, Defendants only offer
a declaration by the Head of Payroll at MTS, Oscar Cantor. (Doc. No. 16-1
("Cantor Decl.").) Mr. Cantor has access to an employee database containing
employees' information, including employees' names, identification numbers,
hourly wages, total compensation, job positions, location, job status, dates of
hire, and separation dates. (Cantor Decl. ¶ 3.) Mr. Cantor ran queries and/or
had queries run under his direction, and identified the following information for
the relevant time periods: (1) the number of putative class members; (2) the
average number of weeks worked by a class member; (3) class members'
average hourly rate; and (3) class members' weekly compensation scheduled.
(Cantor Decl. ¶ 4.) The averages were taken across all Defendants' employees
in all positions who fall within the putative class. (*Id.*)

There is no indication that Mr. Cantor reviewed any class members'
timecards or other work schedules, and he provides no information regarding

---

[2] Defendants offer $1,264,251 as an estimate for Meal Break Premiums and
$1,264,251 as an estimate for Rest Break Premiums. (Removal ¶¶ 49-54.)

CIVIL MINUTES – GENERAL Initials of Deputy Clerk bh

how many meal or rest periods were taken by employees in this period.  (*See* Cantor Decl.)  Work schedules and timecards would indicate the number of meal and rest periods class members should have been provided, which is particularly important where the number of potential violations is determined by the number of hours worked by an employee in a day.  While this omission could prove fatal to a defendant's estimate in other circumstances, here, Plaintiff alleges that the timecards were inaccurate.  (Compl. ¶¶ 3, 15.)  Class members allegedly "work[ed] off the clock" without accurately recording all time worked, "including by rounding hours worked to their detriment."  (Compl. ¶ 3.)  Defendants also allegedly required Plaintiff and the class members "to input times that did not reflect all hours actually worked."  (Compl. ¶ 15.)  Consequently, it was reasonable for Defendants to omit an analysis of employees' timecards based on Plaintiffs' specific factual allegations.

Defendants' evidence is not robust; they provide no further grounds for estimating that two meals and two rest periods were missed per week.  Nevertheless, Defendants' estimate is reasonable in light of Plaintiffs' specific factual allegations that class members generally worked shifts ranging from ten to eighteen hours, five to six days a week, and that rest breaks after the first break were generally denied.  (Compl. ¶ 15.)  If this estimate is inaccurate, based on Plaintiff's allegations, it is likely to vary upwards rather than downwards.

The Court finds that in light of the alleged unreliability of Defendants' timekeeping records, the Cantor Declaration, and the specific factual allegations pled in the Complaint regarding the length of the workdays, the number of shifts per workweek, and language indicating the frequency of the missed meal and rest breaks, Defendants' assumed number of missed meal and rest breaks is

reasonable and appears conservative.  *See Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1028 (C.D. Cal. 2017) (Defendant sufficiently supported its estimated amount in controversy by providing a declaration from a Senior Vice President of Human Resources that approximated the number of non-exempt employees, dates of employment, cumulative number of work weeks, average hourly pay, and full time or part time status.).

Having met their initial burden, the burden shifts to Plaintiff to present evidence to the contrary.  *See Garcia*, 207 F. Supp. 3d at 1120.  Plaintiff fails to present any such evidence.  Accordingly, Defendants have established adequately that $2,528,502 is a reasonable estimate of the amount in controversy for Plaintiff's meal and rest break claims.

### 2. Wage Statement Penalties

Plaintiff seeks to recover penalties for Defendants' alleged failure to provide employees with accurate itemized wage statements pursuant to California Labor Code section 226.  (Compl. ¶¶ 90-96.)  Wage statements must include: wages earned, hours worked, pay period dates, and all applicable hourly rates.  Cal. Lab. Code § 226(a).  Intentional failure to furnish these accurate itemized wage statements subjects the employer to a penalty; the injured employees are "entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."  Cal. Lab. Code § 226(e)(1).

Plaintiff's allegations regarding wage statement penalties include:

- "Defendants failed to provide Employees with accurate itemized wage statements in writing . . . [s]pecifically, the wage statements given to Employees by Defendants failed to accurately account for wages, overtime, and premium pay for deficient meal periods and rest breaks, and rounded timekeeping entries to the detriment of the Class members. . ." (Compl. ¶ 92.)
- "Throughout the liability period, Defendants intentionally failed to furnish to Plaintiff and the Class members, upon each payment of wages, [accurate] itemizes statements. . ." (Compl. ¶ 93.)
- "Pursuant to Labor Code §§ 226(a) and 226(e), Employees are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occur[ed] and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." (Compl. ¶ 96.)

Defendants estimate $649,650 as the amount in controversy for the wage statements penalty claims. (Opp'n at 18-19.) They calculated this amount as follows: applicable employees [183] x the statutory penalty rate [(initial pay period [1] $50 + $100 for subsequent pay periods [35]), with a statutory penalty cap of $4,000]. (Removal ¶ 58.) Plaintiff argues that assuming a violation occurred in all of the average 36 pay periods is mere speculation. (Mot. at 12.)

The Court finds the Defendants' assumption of a 100% violation rate is reasonable for the same reasons discussed in its meal and rest break analysis. Plaintiff and class members' work shifts allegedly exceeded ten to eighteen hours a day five or six days a week without proper rest and meal breaks. (*See* Compl. ¶ 15.) Additionally, Plaintiff alleges, without qualifying words such as

"sometimes" or "often," that "Defendants did not maintain real time punch records accurately reflecting the actual hours worked by Plaintiff and the Class members." (Compl. ¶ 15); *see also Feao v. UFP Riverside, LLC*, No. CV 17-3080-PSG, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) ("In addition, Plaintiff's allegations contain no qualifying words such as "often" or "sometimes" to suggest less than uniform violation that would preclude a 100 percent violation rate."). These specific factual allegations give rise to the reasonable assumption that every wage statement did not accurate reflect the wages earned, hour worked, and hourly rates.

Again, Defendants met their initial burden of showing that the assumptions and data underlying their calculation was reasonable. The burden then shifts to Plaintiff to submit evidence to the contrary, which Plaintiff fails to do. The Court therefore finds that Defendants adequately supports that $649,650 is a reasonable estimate of the amount in controversy for Plaintiff's wage statement penalty claim.

### 3. Unpaid Wages

Defendants estimate the unpaid overtime wage violations amount in controversy is $635,832 based on the assumption that they failed to pay Plaintiff and class members for one hour of overtime per week. (Opp'n at 16.) Again, Defendants fail to offer robust evidence to support this assertion. Yet, in light of Plaintiff's allegations of inaccurate timecards and shifts regularly exceeding ten to eighteen hours a day five to six times per week, the Court finds an estimated one hour of unpaid overtime per week to be a reasonable and conservative estimate. *See Jasso v. Money Mart Express, Inc.*, No. 11-cv-05500, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (estimates of a one hour of overtime per week

violation reasonable where the plaintiff alleged that class members were not compensated for overtime and denied meal and rest breaks at "all material times" based on a "uniform policy and systematic scheme"). Plaintiff presents no evidence to the contrary. Thus, the Court finds that the Defendants adequately supported by a preponderance of the evidence their estimated amount in controversy for Plaintiff's unpaid wages claim.

### 4. Minimum Wage Penalties

The parties dispute whether minimum wage penalties pursuant to California Labor Code section 1197.1 should be included in the amount in controversy calculation. (Opp'n at 14-15; Doc. No. 17 ("Reply") at 7-8.) Plaintiff alleges the class is entitled to recover minimum wage penalties pursuant section 1197.1. (Compl. ¶¶ 49-61.) Defendants, in turn, estimate $1,619,550 to be in controversy for these penalties, calculated as follows: 36 (average number of pay periods for the applicable time period) x 183 (applicable number of employees) x ($100 + $250 [35]) (statutory penalty rate based on the initial pay period penalty of $100 followed by $250 penalty for the following 35 pay periods). (Opp'n at 15; Removal ¶ 48.) Plaintiff argues in his Opposition that the penalties cannot be calculated in the amount in controversy to establish CAFA jurisdiction because section 1197.1 may only provide a private right of action for California's Private Attorney General Act ("PAGA") claims and not class action claims. (Reply at 7-8.)

At the time of removal, Plaintiff alleges these 1197.1 penalties as a private right, "enforceable by private civil action." (Compl. ¶ 54.) Plaintiff did not file its minimum wage penalty claim as a PAGA action and instead filed it as a class action claim. (Compl. ¶ 58 ("Pursuant to California Labor Code section 1197.1,

Plaintiff and Class Members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure . . .").)  The Court assesses whether it has jurisdiction as of the time of removal based on the allegations in the in the operative complaint. *See Ibarra*, 775 F.3d at 1197; *Hernandez v. Towne Park, Ltd.*, No. CV 12-02972 MMM JCGX, 2012 WL 2373372, at *10 (C.D. Cal. June 22, 2012) ("[T]he court can, in calculating the amount in controversy, validly include potential penalties . . . because that is the relief sought in the complaint.").  Thus, even if Plaintiff intends to amend his Complaint to add a PAGA claim and convert this claim such that is arises under PAGA rather than derive from his unpaid compensation claims, it does not do so now.

Further, section 1197.1 penalties can properly be included in the amount in controversy calculation to establish CAFA jurisdiction if pled in the operative complaint.  *Id.*; *Franke v. Anderson Merchandisers LLC*, No. CV173241DSFAFMX, 2017 WL 3224656, at *5 (C.D. Cal. July 28, 2017) (minimum wage claim amount in controversy calculations can include the alleged 1197.1 minimum wage penalties).  Damages arising from Plaintiff's minimum wage penalties is properly included in the amount in controversy calculation, and the calculation is reasonably supported.

The Court declines to analyze disputes regarding the amount in controversy for any other claims because Defendants have met their burden to establish that that amount in controversy exceeds $5 million based on the above-discussed claims.

## IV.    CONCLUSION

For the reasons stated above, the Court finds Defendants have established that the amount in controversy in this litigation exceeds the jurisdiction threshold under CAFA.  Accordingly, the Court DENIES Plaintiff's Motion.

**IT IS SO ORDERED.**