**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6



FILED
CLERK, U.S. DISTRICT COURT

SEPT 18, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY:_____BH_____ DEPUTY

Jorge A. Zepeda,

        Plaintiff,

        v.

Mastec Network Solutions, LLC, et al.,

        Defendant.

5:18-cv-00749-VAP-SHKx

**Order GRANTING Motion for Final Approval of Joint Stipulation of Class Action Settlement and Release (Doc. No. 38); and GRANTING IN PART AND DENYING IN PART Motion for Attorney Fees and Costs and Class Representative Enhancement (Doc. No. 39).**

Before the Court are Plaintiff's unopposed Motion for Final Approval of Joint Stipulation of Class Action Settlement and Release (Doc. No. 38, the "Settlement Motion") and Plaintiff's unopposed Motion for Attorney Fees and Costs and Class Representative Enhancement Payment (Doc. No. 39, the "Fees Motion").  After considering the papers filed in support of the motions, the Court GRANTS the Settlement Motion and GRANTS IN PART and DENIES IN PART the Fees Motion.

## I. BACKGROUND

The parties are familiar with the background of this dispute, and the Court detailed the facts in its Order granting the Motion for Preliminary

United States District Court
Central District of California

Approval of a Class Action Settlement.  (Doc. No. 34.)  In short, Plaintiff filed a class action complaint against Defendants Mastec Network Solutions, LLC and Mastec Network Solutions, Inc. (collectively, "Defendants"), alleging numerous violations of California's wage and hour laws (Doc. No. 23). Defendants employed Plaintiff and the other 633 putative class members as non-exempt hourly foremen and technicians involved in the construction, installation, service, and maintenance of communications towers and support structures.  (*Id.* at ¶ 2).

Discovery in this case included document production over the course of approximately six months and the deposition of Plaintiff.  (Doc. No. 28-2, ¶¶ 17–18).  The parties attended a day-long mediation with mediator Todd Smith and subsequently agreed to settle the action.  (*Id.* at ¶¶ 17, 24).  The Court granted preliminary approval of the settlement.  (Doc. No. 34.)

The key terms of the proposed settlement (the "Settlement Agreement") provide that Defendants will pay $500,000 in exchange for a full release of all claims from all class members who do not opt out.  (Doc. No. 28-2, ¶¶ 40–41).  After the deduction of $150,000 in attorneys' fees to Plaintiff's counsel, roughly $10,000 in expenses, $10,000 in an incentive payment to Plaintiff, $9,000 in settlement administration costs, and $7,500 for the Labor and Workforce Development Agency penalty, the amount remaining is $313,500.  (*Id.* at ¶¶ 40–50).  That amount will be divided among class members based on a calculated workweek value, with each member receiving an amount proportional to the number of weeks they worked within the class period.  (*Id.* at ¶¶ 56, 58).

## II.    LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.   *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to class members, the Court must determine whether final approval is warranted.  *Id.*  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement.  *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026.  "In

1    addition, the settlement may not be the product of collusion among the

2    negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

3

4        "[S]trong judicial policy . . . favors settlements, particularly where

5    complex class action litigation is concerned."  *Class Plaintiffs v. City of*

6    *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  In addition, "[t]he involvement

7    of experienced class action counsel and the fact that the settlement

8    agreement was reached in arm's length negotiations, after relevant

9    discovery had taken place create a presumption that the agreement is fair."

10   *Linney v. Cellular Alaska P'ship*, No. C-96-3008-DLJ, 1997 WL 450064, at

11   *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

12

13                        **III.    DISCUSSION**

14   **A.  Product of Serious, Informed, Non-Collusive Negotiations**

15       As previously found by this Court, the parties engaged in arm's-length,

16   serious, informed, and non-collusive negotiations between experienced and

17   knowledgeable counsel.  (Doc. No. 34, 9–10.)  Additionally, the Settlement

18   Agreement was reached after an all-day mediation with a neutral and

19   experienced mediator, Todd Smith.  (Doc. No. 28-2, ¶¶ 17, 24).  The

20   Settlement Agreement is therefore the product of a non-collusive, arms-

21   length negotiation, *see Roe v. SFBSC Management, LLC*, No. 14-cv-03616-

22   LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a

23   settlement that is the product of an arms-length negotiation "conducted by

24   capable and experienced counsel" is presumed to be fair and reasonable);

25   *Satchell v. Fed. Express Corp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4

26   (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the

United States District Court
Central District of California

4

United States District Court
Central District of California

settlement process confirms that the settlement is non-collusive.").  This

factor therefore weighs in favor of approval.


### B.  The Strength of the Plaintiff's Case and Future Risks[1]

In assessing the strength of the case, the Court need not "reach any

ultimate conclusions on the contested issues of fact and law which underlie

the merits of the dispute, for it is the very uncertainty of [the] outcome in

litigation and avoidance of wasteful and expensive litigation that induce

consensual settlements."  *Officers for Justice v. Civil Serv. Comm'n of San

Francisco*, 688 F.2d 615, 625 (9th Cir.1982).  As to risk, the Court may

"consider the vagaries of litigation and compare the significance of

immediate recovery by way of the compromise to the mere possibility of

relief in the future, after protracted and expensive litigation."  *Vasquez v.

Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (citation

omitted).  "In most situations, unless the settlement is clearly inadequate, its

acceptance and approval are preferable to lengthy and expensive litigation

with uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221

F.R.D. 525, 526 (C.D. Cal. 2004) (internal quotation marks omitted).


As noted in the Court's preliminary approval order, Plaintiff would face

substantial risks from continued litigation, particularly in proving damages

and concerning the impact of the arbitration agreements signed by roughly

40% of class members.  (Doc. No. 34, 12.)  Plaintiff concedes these issues

---

[1] As the first three *Hanlon* factors—strength of the plaintiffs' case; the risk,
expense, complexity, and likely duration of future litigation; and the risk of
maintaining class action status throughout the trial—are interrelated, the
Court discusses them together here.  *Hanlon*, 150 F.3d at 1026.

could preclude or reduce the recovery of damages should the case proceed to trial.  (Doc. No. 38-1, 17–18.  ("[W]hile Plaintiff believes he has arguments and evidence to counter each one of Defendants' positions, there is no guarantee the Court or jury would agree."))  Given the strength of Plaintiff's claims, the risks and costs associated with future complex litigation, and the uncertain prospect of recovery, the terms of the Settlement Agreement appear to be reasonable.  These factors weigh in favor of approval.

### C.  The Amount Offered in Settlement

"To determine whether [a] settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated."  *Millan v. Cascade Water Servs. Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015) (citing *Litty v. Merrill Lynch & Co., Inc.*, No. CV-14-0425-PA, 2015 WL 4698475, at *9 (C.D. Cal. April 27, 2015) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).  A proposed settlement may be fair, adequate, and reasonable even though greater recovery might be available to the class members at trial. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir.1982).  Further, the Ninth Circuit has long deferred to the parties' private, consensual decisions.  *See Hanlon*, 150 F.3d at 1027.

Following discovery, Plaintiff estimated the class claims were worth up to $5,849,866.62.  (Doc. No. 38-2, ¶ 28.)  Given that the proposed Class

United States District Court
Central District of California

Settlement Amount is just $500,000, or 8.5% of the total estimated liability exposure calculated by Plaintiff (*id.*), the Court asked the parties to brief this issue further.  In supplemental briefings, the parties explained that the Class Settlement Amount reflects Defendants' affirmative defenses and their refutation of the wage claims, the uncertainty surrounding class certification, and the large number of putative class members who had signed arbitration agreements.  (Doc. Nos. 32–33.)  Plaintiff argues that "[u]sing the reduced numbers that further factor in Defendants' arguments against liability and the arbitration agreements signed by 40% of the Class members resulted in a reduced estimated liability exposure of $2,701,661.73," bringing the Class Settlement Amount to about 18.5% of the value of the class claims.  (Doc. No. 38.2, ¶ 30.)

In preliminarily approving the settlement, the Court found these arguments credibly addresses the gap between the Class Settlement Amount and the possible ceiling on Plaintiff's claim.  (Doc. No. 34, 12.) When facing an uphill battle at trial, accepting a settlement that represents a small percentage of the maximum value of a claim is a reasonable choice. *Officers for Justice*, 688 F.2d at 628.  Here, the Court agrees that "the Settlement value of $500,000 . . . is fair and reasonable given the risk of no recovery following protracted litigation . . ..  [I]t is in the best interests of the Settlement Classes to receive a certain and substantial award."  (Doc. No. 38-1, 19.)  This factor weighs in favor of approval.

**D. The Extent of Discovery Completed and the Stage of the Proceedings**

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Where the parties have conducted extensive discovery, this factor favors final approval "because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (internal quotation marks omitted).

Here, the parties possess sufficient information to make an informed decision about the Settlement Agreement. Prior to filing the complaint, Plaintiff's counsel conducted substantial research as well as interviews with the Class Representative. (Doc. No. 38-1, 10.) The parties undertook formal and informal discovery, through which Defendants produced over one thousand pages of documents, along with ESI in the form of timekeeping records and payroll data. (Doc. No. 38-2, ¶¶ 19–24.) Plaintiff also provided over five hundred pages of documents in response to discovery requests. (*Id.* at ¶ 19.) Throughout this process, the parties were in frequent communication, allowing them to develop a transparent and detailed understanding of their respective positions before coming to mediation. (Id. at ¶¶ 19–24.) This factor weighs in favor of approval.

**E. The Experience and Views of Counsel**

Since "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected

outcome in litigation," courts tend to give considerable weight to counsel's opinion. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Here, counsel for both sides represent they have ample experience litigating class actions similar to this case. (Doc. No. 38-2, ¶¶ 6–7.) Additionally, counsel are better positioned than the Court to produce a fair settlement considering the amount of investigation and research they have conducted. (Doc. No. 38-2, ¶¶ 19–24.) Considering their experience and their view that the Settlement Agreement "appropriately reflects the relative strengths of the parties' respective claims and defenses, as well as the substantial risk presented in continuing the litigation," (Doc. No. 38-1, 23), the Court finds this factor weighs in favor of approval.

### F.   The Presence of a Governmental Participant

There is no governmental participant in this action, but Plaintiff brought claims under California's Private Attorneys General Act ("PAGA") on behalf of the state and affected employees. Under PAGA, the Labor and Workforce Development Agency (the "LWDA") is entitled to 75 percent of any settlement of civil penalties awardable under the Labor Code. *See* Cal. Labor Code § 699(i).

The Settlement Agreement provides for a $10,000 PAGA payment, $7,500 of which will go to the LWDA. (Doc. No. 39-3, ¶ 38.) This figure is consistent with settlement approval of PAGA awards by other California district courts. *See, e.g.*, *Garcia v. Gordon Trucking, Inc.*, No. CV-10-0324-AWI (SKOx), 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012) (approving

United States District Court
Central District of California

payment of $7,500 to the LWDA, 0.2 percent of the $3.7 million total settlement amount, in satisfaction of plaintiffs' PAGA claims); *Chu v. Wells Fargo Invs., LLC*, No. C-05–4526-MHP, C-06-7924-MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement payment of $7,500 to the LWDA out of $6.9 million common-fund settlement, equaling 0.1 percent of the total settlement amount); *Singer v. Becton Dickinson & Co.*, No. CV-08-821-IEG (BLMx), 2010 WL 2196104, at *1–2 (S.D. Cal. June 1, 2010) (approving payment of $3,000 to the LWDA, 0.3 percent of the $1 million gross fund value, for PAGA penalties).  Thus, the Court finds that the $10,000 payment to the LWDA is fair.  This factor weighs in favor of approval.

### G.   The Reaction of The Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the settlement administrator mailed the proposed notice and notice form (together, the "Notice") to each of the 633 identified class members.  (Doc. No. 38-3, ¶¶ 6–11.)  The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option.  (*Id.*)  During the allotted response period, the settlement

administrator received zero objections and just three requests for exclusion from among the 633 class members.  (*Id.* at ¶¶ 12–13.)

Given the low number of requests for exclusion and the absence of any objections to the terms or conditions of the Settlement, the Class response is favorable overall.  Accordingly, this factor also weighs in favor of approval.

## H.   Balancing the Factors

As all the factors favor approval of the settlement, the Court finds that the proposed settlement agreement is fair, reasonable, and adequate and GRANTS final approval of the settlement.

## I. Plaintiff's Motion for Attorneys' Fees

Notwithstanding an explicit agreement to shift attorneys' fees in a certified class action, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 941 (9th Cir. 2011).

Reasonable attorneys' fees are generally calculated by application of the lodestar method, which requires multiplying a reasonable hourly rate by the hours reasonably expended.  *See City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Ninth Circuit has held that "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar

method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)).  Here, Plaintiff seeks to employ the percentage-of-the-fund method but argues that Class Counsel's request for 30% of the Class Settlement Amount, equal to $150,000, is consistent with both the lodestar and percentage-of-the-fund approach.  (*See* Doc. No. 39-1, 6.)

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; and (5) the awards made in similar cases.  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).  The Court addresses these factors below.

### 1.   Results Achieved

After attorneys' fees and other deductions, the net settlement amount won by Class Counsel is $313,500, resulting in an estimated average award of $497.62 for each participating class member.  (Doc. No. 39-1, 7.)  While mindful that this is a meaningful sum and that Plaintiff's claims faced serious headwinds, as discussed above, it bears repeating that the Class Settlement Amount is merely 8.5% of the potential value of the class's claims.  In cases where class members recovered a similarly low

United States District Court
Central District of California

percentage award, the Court has found the result achieved does not justify a departure from the benchmark.  *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP-SPx, 2017 WL 10434013, at *6 (C.D. Cal. Oct. 12, 2017).

### 2.  Risks of Litigation

Although Class Counsel did assume some degree of risk by representing Plaintiff, Class Counsel have not shown that this case carries the type of extreme risk that would merit a departure from the 25% benchmark.  *Compare Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense") and *Hawthorne v. Umpqua Bank*, No. CV 11-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fees award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), with *Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).  Accordingly, this factor weighs against an attorneys' fees award above the 25% benchmark.

### 3.  Contingent Nature of the Fees

Class Counsel took this case on a contingent fee basis. The Ninth Circuit "has suggested the distinction between a contingency arrangement

and a fixed fee arrangement alone does not merit an enhancement from the benchmark." *Richardson v. THD At-Home Servs., Inc.*, No. CV 14-0273-BAM, 2016 WL 1366952, at *9 (E.D. Cal. Apr. 6, 2016) (citing *In re Bluetooth*, 654 F.3d at 942 n.7); *see also Torrisi*, 8 F.3d at 1376 (noting that there were "no special circumstances . . . which indicate the 25% benchmark award is either too small or too large" even though class counsel took the case on "double contingency"). Accordingly, the Court will treat this factor as neutral.

### 4.  Skill and Quality of the Work

While the Court does not doubt Class Counsel are experienced and skilled litigators, they have not shown the kind of exceptional skill or quality of work to warrant a departure from the 25% benchmark.  The attorney time reasonably dedicated to this case was limited; the parties settled before there was significant motion practice; the legal issues presented were neither complex nor novel; and Counsel has litigated class actions with similar claims and issues, *see, e.g.*, *Ceja-Corona v. CVS Pharmacy, Inc.*, No. CV 12-01868-AWI-SA, 2014 WL 4472691, at *1 (E.D. Cal. Sept. 11, 2014).  The Court will treat this factor as neutral.

### 5.  Awards Made in Similar Cases

As noted above, the Ninth Circuit has established a 25% benchmark award for attorneys' fees.  *Hanlon*, 150 F.3d at 1029.  Class Counsel cite to several cases in which courts have awarded attorneys' fees at or above 30% of the total settlement fund.  (Doc. No. 39-1, 17–18.)   While some of these may be analogous to the present case, others are easily

United States District Court
Central District of California

distinguishable.  *See, e.g., Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3941319, at *1 (N.D. Cal. July 18, 2013) (awarding 30% where counsel litigated for more than seven years and won a $29,750,000 settlement fund); *Bennett v. SimplexGrinnell LP, No.* CV 11-01854-JST, 2015 WL 12932332, at *1 (N.D. Cal. Sept. 3, 2015) (awarding an upward adjustment where the net settlement amount available for distribution to 533 class members was $2,693,950, approximately 30% of the defendant's possible exposure at trial).

Indeed, courts regularly adhere to the Ninth Circuit's benchmark when awarding fees in wage and hour class actions.  *See Brooks v. Life Care Centers of Am., Inc.*, No. SACV-12-00659-CJC (RNBx), 2015 WL 13298569, at *4 (C.D. Cal. 2015) ("Awarding the benchmark in mine run of wage and hour cases appears to be standard in this District."); *see also Bravo v. Gale Triangle, Inc.*, No. CV-16-03347-BRO (GJSx), 2017 WL 708766, at *16 (C.D. Cal. Feb. 16, 2017) (rejecting an upward departure from the benchmark and noting that, "while some courts have found that an upward adjustment is supported in wage and hour class action cases, other courts have not, or have found that such adjustments are supported only when the results are exceptional"); *Monterrubio*, 291 F.R.D. at 457-58 (rejecting the class counsel's request for a departure from the 25% benchmark in what the court deemed "a garden-variety wage and hour class action").  While courts may sometimes depart from the benchmark, Class Counsel have not established that such a departure is warranted here.  Accordingly, this factor weighs slightly against departing from the 25% benchmark.

### 6. <u>Lodestar Cross-Check</u>

"Courts may apply the lodestar method as a 'cross-check'" on the reasonableness of a percentage-based fee award." *Bravo*, 2017 WL 708766 at *17 (citing *Vizcaino*, 290 F.3d at 1050). "[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

The lodestar is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d, 359, 363 (9th Cir. 1996). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *Roberts v. City and County of Honolulu*, 2019 DJDAR 8807–08 (9th Cir. 2019). The "relevant community" for purposes of the "prevailing market rate" is the "forum in which the district court rests." *Id.* at 979.

The Court has performed a limited review of Class Counsel's billing reports. *See Schiller v. David's Bridal, Inc.*, No. CV-10-00616-AWI, 2012 WL 2117001, at *20 (E.D. Cal. June 11, 2012) ("Where the use of the lodestar method is used as a cross-check to the percentage method, it can

United States District Court
Central District of California

be performed with a less exhaustive cataloguing and review of counsel's hours.").  Class Counsel have provided affidavits indicating they spent a total of 379 attorney hours on this case at a blended hourly rate of $655 (i.e., David Yeremian billed 54 hours at $685 per hour and Alvin Lindsay billed 325 hours at $650 per hour), resulting in approximately $248,250 in fees.  (Doc. No. 39-1, 19–20.)  The summaries provided by Class Counsel do not appear to inflate the time required by the litigation, though these logs are not itemized in a way that allow for detailed review.  This type of "block billing" prevents courts from determining whether the time devoted to individual tasks was reasonable and may lead a court to reduce the total hours considered in an attorneys' fees request.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (citing a report by the California Bar Association that block billing "'may increase time by 10% to 30%'" and noting that block billing presents difficulty in determining reasonableness).  Furthermore, it appears that some of the time billed by Class Counsel is not justifiable.  For instance, Class Counsel billed time for clerical tasks (e.g., drafting a certificate of interested parties) and tasks an experienced litigator should not need to do (e.g., reviewing federal requirements and the electronic document filing system).  (Doc. No. 39-8, 2.)

Even if Class Counsel were to update their lodestar figures to provide greater transparency and to remove improper charges, "[t]he fact that the lodestar significantly outpaces an award based on the 25% benchmark" without more "is not a compelling reason to depart from the Ninth Circuit's benchmark, particularly absent evidence of exceptional risk or difficulty." *Brooks*, 2015 WL 13298569, at *5; *see also Ridge v. Infinity Sales Grp.,*

*LLC*, No. CV 12-6985-GW (SHx), 2014 WL 12589629, at *8 (C.D. Cal. July 24, 2014) (noting that, "[g]enerally speaking, this Court does not exceed the ... 25% benchmark" in "relatively simple and straightforward" cases unless "there is some indication that counsel performed exceptionally or in another unusual manner" and that "[t]his remains true even though Plaintiff's counsel indicates that the figure he seeks is itself already a negative multiplier when a lodestar cross-check is applied"); *Sandoval v. Tharaldson Employee Management, Inc.*, No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9 (C.D. Cal. June 15, 2010) (rejecting a request to exceed the 25% benchmark because the plaintiff did not "present[ ] evidence of unusual circumstances that justify a departure from the Ninth Circuit's benchmark" aside from arguing that the lodestar exceeded the benchmark).

### 7. <u>Conclusion</u>

The totality of the benchmark departure factors does not weigh in favor of an award above the 25% benchmark.  In addition, the Court declines to rely on Class Counsel's lodestar calculation figures for the reasons stated above.

The Court, therefore, finds that the facts of this case do not present the type of "unusual circumstances" required to justify a departure from that benchmark. *Graulty*, 866 F.2d at 272.  Accordingly, the Court DENIES Class Counsel's application for attorneys' fees equal to 30% of the settlement fund ($150,000.00).  Instead, the Court APPROVES an attorneys' fees award of 25% of the settlement fund ($125,000.00).

United States District Court
Central District of California

### J.   Class Counsel Expenses

Class Counsel seeks $9892.78 in reimbursement for costs.  (Doc. No. 39-1, 24.)  Class Counsel have submitted a detailed accounting as to those expenses. (Doc. No. 39-6.)  The Court finds that reimbursement of those expenses is reasonable and APPROVES the reimbursement of the amount sought.

### K.   Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  "The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Staton*, 327 F.3d at 977. Courts may also consider: "1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  *Van Vranken v. Atl. Richfield Co.*,

19

901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Courts have generally found that $5,000 incentive payments are reasonable."  *Alberto*, 252 F.R.D. at 669.

Here, Class Counsel requests that Plaintiff Jorge Zepeda receive an incentive payment of $10,000.00.  Class Counsel generally notes that named Plaintiff expended significant time and effort supporting Class Counsel and risks unfavorable treatment from future employers by identifying himself with this lawsuit, but they fail to provide specifics and merely recite boilerplate language. (Doc. No. 39-1, 26.)  Plaintiff Zepeda states he has spent over eighty hours in connection with the suit, providing specific examples of his contributions, and explaining his fear of workplace retaliation.  (Doc. 39-11, ¶¶ 14–18.)

While Plaintiff Zepeda completed work on behalf of the class and assumed some financial or reputational risk in bringing the action, the work and risk do not appear to be beyond the usual amount named plaintiffs assume in wage-and-hour class actions.  Assuming he has spent eighty hours assisting Class Counsel, the proposed $10,000 award would represent a rate of $125 per hour.  Additionally, as the Court noted in its preliminary approval of the settlement, the Court must be cognizant of the interests of other class members, each of whom stands to receive less than one twentieth of the proposed award.  *See* Fed. R. Civ. P. 23(e)(2)(D) (stating a court should consider whether a proposed settlement "treats class members equitably relative to each other.")

Accordingly, the Court does not find it reasonable to issue an incentive award that is twice the generally reasonable $5,000.00 payment.  The Court DENIES Class Counsel's request for an incentive award payment of $10,000.00.  Instead, the Court APPROVES an incentive award payment of $5,000.00 for the named plaintiff.

### L.    Settlement Administrator Costs

Plaintiff requests the Court approve the reasonable costs of administering the settlement, in an amount not to exceed $9,000. (Doc. No. 39–3, ¶ 38.)  The settlement administrator was charged with administering the settlement fund by, among other things, mailing the Notice to settlement class members; receiving and tracking claim forms; receiving and tracking opt outs and objections from nonparticipating class members; and distributing payments to all participating class members. (Doc. No. 39–9.) The Court finds the settlement administrator expenses reasonable and APPROVES the reimbursement.

### IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the Motion for Final Approval of Class Settlement.

The Court GRANTS IN PART and DENIES IN PART the Motion for Approval of Award of Attorneys' Fees and Costs and Class Representative Enhancement.  Plaintiff's request for attorneys' fees in the amount of $150,000.00 is DENIED.  Instead, the Court APPROVES attorneys' fees for Class Counsel of no more than $125,000.00.  Likewise, Plaintiff's request

for a $10,000.00 incentive payment to the named plaintiff is DENIED.

Instead, the Court APPROVES an incentive payment of $5,000.00 to the

named plaintiff.  The Court APPROVES Plaintiff's request for settlement

administration costs.

All other cost reimbursements are APPROVED as set forth above.

**IT IS SO ORDERED.**

Dated:     9/18/19

Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California